UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| CUSTOMIZED DISTRIBUTION, LLC | ) | (Involuntary) |
| | ) | |
|     Debtor | ) | CASE NO. 25-52759-jwc |
| _____ | ) | |
| | ) | |
| LIPMAN-TEXAS, LLC t/a LIPMAN FAMILY | ) | |
| FARMS, FRESHPOINT ATLANTA, INC., and | ) | |
| YOUR WAY FRESH, LLC | ) | |
| | ) | |
|     Movants | ) | |
| v. | ) | |
| | ) | |
| CUSTOMIZED DISTRIBUTION, LLC | ) | |
| | ) | |
|     Respondent | ) | |
| _____ | ) | |

**MOTION (1) TO PROHIBIT DISPOSITION OF ASSETS BY DEBTOR PURSUANT TO
11 U.S.C. 303(f), (2) FOR AUTHORITY TO DEPOSIT FUNDS WITH ALL RIGHTS
RESERVED, (3) TO MODIFY STAY FOR LIMITED PURPOSE, AND
(4) TO GRANT RELIEF ON AN EXPEDITED BASIS**

COME NOW Lipman-Texas, LLC t/a Lipman Family Farms ("Lipman"), FreshPoint

Atlanta, Inc. ("FreshPoint"), and Your Way Fresh, LLC ("Your Way")(collectively, "Movants")

and hereby seek on an expedited basis an Order (i) prohibiting the disposition of assets by

involuntary debtor Customized Distribution, LLC ("CDI"), pursuant to 11 U.S.C. 303(f); (ii)

authorizing Movants to receive and deposit non-estate funds, with the rights of all parties being

reserved and no disbursement permitted pending further order of the Bankruptcy Court; and (iii)

modifying the automatic stay for the limited purpose of allowing Movant's lawsuit against Non-

Debtor Defendants (defined below) pending in the United States District Court for the Northern

District of Georgia, Case No. 1:24-cv-05760-SCJ (the "PACA Litigation"),  to proceed, including

but not limited to allowing the District Court to consider Movants' *Motion for Preliminary Injunction* (the "PI Motion") as it applies to Non-Debtor Defendants at the scheduled hearing on April 3, 2025 (the "PI Hearing").   In support, Movants show as follows:

1.      Movants are engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities ("Produce") in interstate commerce or contemplation thereof and are each dealers subject to and licensed under the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. §§499e(b) and 499e(c)(5) (hereafter "the PACA").

2.      On December 16, Movants Lipman and FreshPoint filed their *Complaint (to Enforce Payment from Produce Trust)*(the "Original Complaint") in the Northern District of Georgia, Atlanta Division (the "District Court"), initiating Case No. 1:24-cv-05760-SCJ (the "PACA Litigation") against CDI, Richard DiStasio (DiStasio"), Daniel Plattner ("Plattner"), Benjamin Escobar ("Escobar"), Jerald Hayes (Hayes")(collectively, DiStasio, Plattner, Escobar, and Hayes are referred to as the "Individual Defendants") , and Wheaton Bank & Trust Company, N.A. ("Wheaton")(collectively, along with CDI and the Individual Defendants, "Defendants"). On December 16, 2024, the District Court clerk issued *Summons* for all Defendants.

3.      On December 16, 2024, Plaintiffs filed their *Emergency Motion for Ex Parte Temporary Restraining Order* (Dist. Ct. Doc. No. 3), *Memorandum of Law in Support of Plaintiff's Emergency Motion for Ex Parte Temporary Restraining Order and Motion for Preliminary Injunction* (Dist. Ct. Doc. No. 3-1), *Declaration of Drew Yurko in Support of Plaintiffs' Emergency Motion for an Ex Parte Temporary Restraining Order and Motion for a Preliminary Injunction* (Dist. Ct. Doc. No. 3-2); *Exhibits to Yurko Declaration* (Dist. Ct. Doc. No 3-3); *Declaration of Martha Farmer in Support of Plaintiffs' Emergency Motion for an Ex Parte Temporary Restraining Order and Motion for a Preliminary Injunction* (Dist. Ct. Doc. No. 3-4); *Exhibits to*

*Farmer Declaration* (Dist. Ct. Doc. No. 3-5); *Declaration of Robert P. Lamere in Support of Plaintiffs' Emergency Motion for an Ex Parte Temporary Restraining Order and Motion for a Preliminary Injunction* (Dist. Ct. Doc. No. 3-6); *Exhibits to Lamere Declaration* (Dist. Ct. Doc. No.. 3-7); *Attorney Certification Why Notice Should not be Required Pursuant to Rule 65(b)*( Dist. Ct. Doc. No. 3-8); Text of Proposed *Ex Parte Order to Show Cause with Temporary Restraints* (Dist. Ct. Doc. 3-9); and the PI Motion (Dist. Ct. Doc. No. 4).

4.      On December 17, 2024, the District Court entered its *Ex Parte Order to Show Cause with Temporary Restraints* (Dist. Ct. Doc. No. 6)(the "TRO"), a copy of which is attached hereto as **Exhibit "A."** The TRO directed "Defendants, their customers, agents, officers, subsidiaries, assigns, banking institutions, money transfer service institutions, affiliates, and related entities, shall not alienate, dissipate, pay over or assign any assets of Customized Distribution, LLC, except for payment to Plaintiffs, until further order of this Court or until Defendants pay Plaintiffs the aggregate principal sum of $395,290.60, by bank check or wire transfer, to be held in trust by Plaintiffs' counsel for the benefit of Plaintiffs and any similarly situated trust creditors, pending further Order of this Court."

5.      The District Court set December 31, 2024, as the date for the show cause hearing on the PI Motion (the "Initial PI Hearing"). On December 30, 2024, the District Court entered its Order rescheduling the Initial PI Hearing to January 6, 2025, and extending the terms and conditions of the TRO to the same date.

6.      On January 2, 2025, counsel for Lipman and FreshPoint had a conference call with counsel for the Individual Defendants and were informed that third parties not named in the PACA Litigation had possession and control of trust assets. In particular, Plaintiffs' counsel was informed that ABL Opco, LLC a/t/a Mountain Ridge Capital ("ABL") paid the secured debt owed to Wheaton

by CDI, subsequently entered into a Deposit Control Account Agreement with CDI on or about February 29, 2024, and thereafter employed BlackBriar Advisors, LLC ("BlackBriar") as Chief Restructuring Officer of CDI.

7.       Movants Lipman and FreshPoint, with the consent of the Individual Defendants, requested that the District Court extend the TRO for fourteen (14) days or twenty-one (21), as the District Court deemed appropriate, so that Lipman and Freshpoint could file an amended Complaint adding ABL and BlackBriar as defendants and effecting service on them such that ABL and BlackBriar could participate in the PI Hearing.

8.       On January 3, 2025, the District Court entered an Order rescheduling the Initial PI Hearing for January 21, 2025, and continuing the TRO through such date (Distr. Ct. Doc. No. 21).

9.       On January 7, 2025, Movants Lipman and FreshPoint filed their *First Amended Complaint (to Enforce Payment from Produce Trust)*(the "Amended Complaint")(Distr. Ct. Doc. No. 23), adding ABL and BlackBriar as party defendants. ABL and BlackBriar have appeared and answered the First Amended Complaint. Individual Defendants have filed a Motion to Dismiss based on lack of subject matter jurisdiction, which remains pending.

10.       Due to inclement weather concerns, on January 19, 2025, the District Court announced that the Initial PI Hearing would be rescheduled. On January 21, 2025, the District Court entered its Order extending the TRO (Distr. Ct. Doc. No. 31).

11.       On January 21, 2025, Your Way filed its *Your Way Fresh, LLC's Motion for Leave to Intervene* and its relating *Memorandum of Law in Support of Your Way Fresh LLC's Motion for Leave to Intervene*, and *Declaration of Kevin Vogt in Support of Your Way Fresh LLC's Motion for Leave to Intervene* (Distr. Ct. Doc. No. 32). Individual Defendants have opposed the intervention.

12.     On January 26, 2025, Cavendish Farms, Inc. and Food Service Systems, LLC, filed their *Intervenor Plaintiffs' Motion for Leave to Intervene* and related *Memorandum of Law in Support of Intervenor Plaintiffs' Motion for Leave to Intervene* (Distr. Ct. Doc. No. 35).  Individual Defendants have opposed the intervention.

13.     On February 27, 2025, the District Court entered its Order setting the PI Hearing for April 3, 2025 (Distr. Ct. Doc. No. 54).

14.     On March 13, 2025, Cold Freight & Dry Ice, Inc., Collins Transportation, Inc., Maritime International Products, Inc., Kenosha Beef International LTD dba Birchwood Foods, Schreiber Foods, Inc., Ventura Foods, LLC, H & T Seafood, Inc. ("Petitioning Creditors") filed the *Involuntary Petition Against Non-Individual* (the "Involuntary Petition") against CDI, commencing the above styled involuntary bankruptcy.

15.     On March 17, 2025, counsel for Movants had a telephone conference with counsel for BlackBriar and were informed that BlackBriar is holding checks from CDI customers payable to CDI in excess of $300,000 (the "Checks"). BlackBriar intended to provide the checks to Movants' counsel for deposit in its trust account in accordance with the TRO, but expressed concern that BlackBriar was prohibited from doing so by the automatic stay resulting from the filing of the Involuntary Petition.

16.     Movants desire to obtain a preliminary injunction against the Individual Defendants, Wheaton, ABL and BlackBriar, and any other party that may be in possession of or liable for PACA trust assets (collectively, the Non-Debtor Defendants"), and continue prosecution of the PACA Litigation against the Non-Debtor Defendants, including the recovery of a money judgment and the disgorgement of PACA trust asset from the Non-Debtor Defendants.

**Relief Requested**

17.     By this Motion, Movants request entry of an Order (i) prohibiting the use and/or disposition of assets by CDI pursuant to 11 U.S.C. 303(f); (ii) authorizing Movants to receive, negotiate  and deposit the Checks into the trust account of Movants' counsel, with the rights of all parties being reserved and no disbursement permitted pending further order of the Bankruptcy Court; and (iii) modifying the automatic stay for the limited purpose of allowing Movants and other PACA claimants to pursue the PACA Litigation against Non- Debtor Defendants.

**Basis for Relief**
**(Prohibiting Disposition of Debtors' Assets)**

18.     11 U.S.C. 303(f) states in pertinent part: "Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. 303(f) "permits the debtor to continue to operate any business of the debtor and to dispose of property as if the case had not been commenced. The court is permitted, however, to control the debtor's powers under this subsection by appropriate orders, such as where there is a fear that the debtor may attempt to abscond with assets, dispose of them at less than their fair value, or dismantle his business, all to the detriment of the debtor's creditors." Senate Report No. 95-989, 95th Cong.2d Sess. 54-55 (1978). Accordingly, Movants seek entry of an Order prohibiting CDI from using, acquiring or disposing of property to prevent the further dissipation of CDI's assets, which are subject to a rebuttable presumption that such assets are subject to the PACA trust and not property of the estate, as set forth more fully below.

**(Negotiation and Deposit of Checks)**

19.      The PACA trust requires a  receiver of wholesale quantities of produce,[1] such as CDI, to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, as well as any receivables or proceeds from the sale thereof, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2). *See generally Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.)*, 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010 (6th Cir. 1993) (noting that assets and proceeds from produce should be held in trust until payment in full).

20.      7 U.S.C. § 499e(c)(2) defines the corpus of the trust as all produce, including all inventories of food or other products derived from produce, and receivables or proceeds from the sale of produce or its products. The commingling of trust assets does not defeat the trust.  7 C.F.R. § 46.46(b).  In addition, under common law trust principles, the trust extends to any other assets acquired from a commingled account.  *Sanzone-Palmisano Co.*, 986 F.2d at 1013; *In re Kornblum & Co., Inc.*, 81 F.3d at 286-87; *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142-43 (Bankr. S.D. Fla. 1990).  A party alleging that assets acquired with commingled funds are not part of the PACA trust has a very difficult burden of proving that the assets are free of the trust.  *Sanzone-Palmisano*, 986 F.2d at 1014.  In the bankruptcy context, the debtor, trustee or secured creditor standing in debtor's shoes, has the burden to establish which, if any, assets are not subject to the PACA trust.  *See In re Atlantic Tropical Market*, 118 B.R. at 142; *In re Richmond Produce*, 112 B.R. 364, 368 (N.D.

---

[1] Wholesale quantities of produce is defined as 2,000 pounds or more in weigh of produce in any day shipped, received, or contracted to be shipped or received.  7 C.F.R. 46.2(x).

Cal. 1990) ("The unpaid sellers are not required to trace and the trust arises immediately upon delivery.").

21.    PACA trust assets are not assets of a bankruptcy estate. "If a buyer or receiver declares bankruptcy ..., trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid." 49 Fed. Reg. at 45738. *See generally, In re Super Spud, Inc.,* 77 B.R. 930, 931 (Bankr. M.D. Fla. 1987); *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.,* 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.,* 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr. 1985); *In re Milton Poulos, Inc.,* 94 B.R. 648 (Bankr. C.D. Cal. 1988) (noting the link between trust assets and trust beneficiaries).  "That the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute." *In re Fresh Approach, Inc.,* 51 B.R. at 419; see also 11 U.S.C. §541(d).[2]

22.    The Checks represent receivable payments from CDI customers to CDI. As such they are presumptively PACA trust assets and not property of CDI's estate. BlackBriar was directed under the TRO to pay the Checks to Movants.

23.    In order to preserve the Checks and the trust assets represented thereby, Movants request authority to receive, negotiate, and deposit the Checks into the trust account for Movants' counsel, with all rights of all parties in and to the Checks and the funds represented thereby being preserved, and no disbursement of the funds permitted, pending further order of the Bankruptcy

---

[2] 11 U.S.C. §541(d) states in pertinent part: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest….becomes property of the estate…only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

Court. Such relief should be granted on an expedited basis to reduce the possibility of non-payment, dishonor, or stop-payment by customers.

### (Relief from the Automatic Stay to Pursue Non-Debtor Defendants)

24.    Movants seek modification of the stay to prosecute the PACA Litigation against the Non-Debtor Defendants. The automatic stay only applies to CDI and does not apply to the Non-Debtor Defendants. Any PACA trust assets in the possession of the Non-Debtor Defendants are not property of the estate, so the recovery of such assets by Movants and other PACA trust beneficiaries will not interfere with the administration of the bankruptcy estate.

25.    Movants' right to recover damages against the Individual Defendants is secondary to the liability of CDI. Movants only seek relief from the stay as to CDI as necessary to qualify and quantify the PACA trust claims of Movants and similarly situated trust beneficiaries, and to establish the liability of the Non-Debtor Defendants.

26.    Movants' right to recover damages against ABL and BlackBriar for disgorgement of trust assets is independent of and not secondary to that of CDI. "Like any transferee, secured lenders will be forced to return trust property they have received unless they can establish their status as bona fide purchasers, i.e., that they received the property for value and without notice of breach of trust." *C.H. Robinson Co. v. Tr. Co. Bank, N.A.*, 952 F.2d 1311, 1315 (11th Cir. 1992); *Bast v. Orange Meat Packing Co*. (*In re G & L Packing Co*.), 41 Bankr. 903 (N.D.N.Y.1984) (holding that accounts receivable collected by the bank were recoverable by trust beneficiaries).

27.    "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay— (1)  for cause…." 11 U.S.C. § 362(d)(1).

28.     "Cause" is not defined in the Bankruptcy Code. "Therefore, it is up to the judiciary to ascribe meaning to the term. What constitutes `cause' is based on the `totality of the circumstances in the particular case.'" *Egwineke v. Robertson (In re Robertson),* 244 B.R. 880, 882 (Bankr. N. D. Ga. 2000). *See also, e.g., In re Brown*, 311 B.R. 409, 412 (E. D. Pa. 2004) ("cause" for relief from stay is broad and flexible concept that must be determined on a case-by-case basis).

29.     While the Bankruptcy Code does not define "cause" for lifting the stay, it is well-established that the existence of pending litigation against the debtor in a nonbankruptcy forum may constitute cause." *In re Coachworks Holdings, Inc.*, 418 B.R. 490, 492 (Bankr. M.D. Ga. 2009) (citing *Smith v. Tricare Rehab. Sys., Inc.* (*In re Tricare Rehab. Sys., Inc*), 181 B.R. 569, 572 n.7 (Bankr. N.D. Ala. 1994)).

30.     Courts focus on three factors: (i) whether any great prejudice to either the bankruptcy estate or the debtor will result from prosecution of the lawsuit; (ii) whether the hardship to the non-debtor party by continuation of the automatic stay considerably outweighs the hardship to the debtor; and (iii) whether the creditor has a probability of success on the merits of his case. *Schuler v. Sandalwood Nursing Ctr., Inc.* (*In re Sandalwood Nursing Ctr., Inc.*), 2018 Bankr. LEXIS 2526 (Bankr. N. D. GA 2018)(citing *In re Robertson*, 244 B.R. at 882).[3] In this case, the District Court has already established the hardship to Movants from the continued dissipation of PACA trust assets and found sufficient grounds to issue the TRO.

---

[3] The last factor has little applicability, here, however. The PACA Litigation is not "entirely and unquestionably frivolous (as in a suit brought against the wrong party or beyond the statute of limitation)" and therefore the likelihood of success on the merits is not a relevant factor. *Groover v. R. J. Groover Constr., L.L.C.* (*In re R. J. Groover Constr.*), 411 B.R. 460, 466 (Bankr. S. D. GA 2008).

31.     The fact that relief is sought against the Non-Debtor Defendants favors modifying the stay for the limited purpose herein. *In re Coachworks Holdings, Inc.* 418 B.R. at 493 (existence of other defendants heavily favors stay relief because "a lawsuit should only be tried once, if one forum with jurisdiction over all parties involved is available to fully dispose of all issues relating to the lawsuit." (quoting *In re Tricare Rehab. Sys., Inc* 181 B.R. at 574).

32.     Prosecution of the PACA Litigation against the Non-Debtor Defendants will not prejudice other creditors, as the PACA Litigation seeks recovery of PACA trust assets, which are not property of CDI's bankruptcy estate, and seeks relief against non-debtor parties. If anything, the satisfaction of Movants and other PACA creditors from the assets of third parties will enhance the recovery from the CDI bankruptcy estate for other creditors of CDI.

33.     Accordingly, cause exists to modify the stay to allow Movants to prosecute the PACA Litigation to establish the primary liability of CDI to Movants and similarly situated trust beneficiaries, to assert secondary liability relief against Individual Defendants, and to establish liability of third party Non-Debtor Defendants ABL and BlackBriar, including disgorgement and all collection methods allowable under applicable law.

34.     The relief sought herein should be granted on an expedited basis so that (i) the PI Hearing may proceed, (ii) the purposes of the remedial statutory PACA trust are not frustrated, and (iii) PACA trust assets not further dissipated by Non-Debtor Defendants. Accordingly, Movants request that this Court grant relief on an expedited basis and waive the 14 day stay provided in Bankruptcy Rule 4001(a)(3).

WHEREFORE, Movants pray that this Court enter an Order on an expedited basis:

(i)     prohibiting CDI from using, acquiring or disposing of property to prevent the further dissipation of CDI's assets;

(ii)     authorizing Movants and their counsel to receive, negotiate, and deposit the Checks

into counsel's trust account, with all rights of the parties being reserved and no

distribution permitted pending further Order of the Bankruptcy Court;

(iii)    modifying the automatic stay to allow Movants and other PACA claimants to

pursue the PACA Litigation against the Non-Debtor Defendants and recover PACA

trust assets in the possession or control of the Non-Debtor Defendants; and

(iv)     granting such other relief as is appropriate.


Dated: March 14, 2025

                                    LAMBERTH, CIFELLI,
                                     ELLIS & NASON, P.A.
                                    *Counsel for Lipman-Texas, LLC t/a Lipman*
                                    *Family Farms. FreshPoint Atlanta, Inc., and*
                                    *Your Way Fresh, LLC*

                                    By: */s/ G. Frank Nason, IV*
                                         G. Frank Nason, IV
                                         Georgia Bar No. 535160
                                         fnason@lcenlaw.com

6000 Lake Forrest Drive, NW
Suite 290
Atlanta, Georgia  30328
(404) 262-7373

**Exhibit "A"**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**LIPMAN-TEXAS, LLC,**
**t/a LIPMAN FAMILY FARMS, a**
**Florida limited liability company; and**
**FRESHPOINT ATLANTA, INC., a**
**Georgia corporation,**

              **Plaintiffs**

**vs.**                                        **Case No. 1:24-cv-05760-SCJ**

**CUSTOMIZED DISTRIBUTION,**
**LLC, a Georgia limited liability**
**company; RICHARD P. DISTASIO,**
**an individual; DANIEL PLATTNER,**
**an individual; BENJAMIN ESCOBAR,**
**an individual; JERALD HAYES,**
**an individual, and WHEATON BANK**
**& TRUST COMPANY, N.A., a**
**Wintrust Community Bank,**

              **Defendants**

_____/

## *EX PARTE* ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS

This matter is before the Court upon the Emergency Motion for *Ex Parte*

Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of Civil

Procedure filed by Plaintiffs, Lipman-Texas, LLC, t/a Lipman Family Farms

("Lipman") and FreshPoint Atlanta, Inc. ("FreshPoint") (Lipman and FreshPoint

collectively "Plaintiffs") which seeks injunctive relief against Customized

1

Distribution, LLC. ("CDI").  After careful consideration of the record, the Court

makes the following findings of fact and conclusions of law.

Pursuant to Rule 65(b), a temporary restraining order may be granted without

notice to the adverse party only if: (1) it clearly appears from specific facts shown

by affidavit that immediate and irreparable injury, loss or damage will result before

the adverse party can be heard in opposition, and (2) the applicant's attorney certifies

the reasons that notice should not be required.

In this case, it appears from the Declarations of Plaintiffs' representatives that

Plaintiffs are produce creditors of CDI under Section 5(c) of the Perishable

Agricultural Commodities Act, 7 U.S.C. § 499e(c) (the "PACA"), and have not been

paid for produce supplied to CDI in the aggregate principal amount of $395,290.60

as required by the PACA.  Between December 2023 and October 2024, Plaintiffs

sold produce to CDI and sent CDI invoices demanding payment of $395,290.60, all

of which remains due and owing, as follows:

| Lipman | August 13, 2024 – October 9, 2024 | $255,608.84 |
| FreshPoint | December 22, 2023 – October 4, 2024 | $139,681.76 |
| **TOTAL** | | **$395,290.60** |

2

Plaintiffs are licensed produce dealers and creditors of Defendants under
Section 5(c) of the PACA (7 U.S.C. § 499e(c)), and its invoices to Defendants
contain the language required by 7 U.S.C. §499e(c)(4) to preserve the PACA trust
rights.

By operation of law, 7 U.S.C. §499e(c)(2) imposes a constructive trust in
favor of the seller of a perishable agricultural commodity. That is, "all such
commodities, as well as accounts receivable from the sale of such commodities, 'shall
be held…in trust for the benefit of all unpaid suppliers or sellers of such
commodities…until full payment…has been received." *Gargiulo v. G.M. Sales, Inc.,*
131 F.3d 995, 999 (11th Cir. 1997) (quoting 7 U.S.C. §499e(c)(2)). It is also clear
that CDI is in financial jeopardy and trust assets in its possession are threatened with
dissipation, as CDI's partial payments to Plaintiff Lipman via three checks dated
mid-September 2024 totaling $31,463.00 were returned unpaid by Lipman's bank in
October 2024 because CDI's account was frozen and blocked, with the checks never
made good. Plaintiff FreshPoint also claims to have received a check in mid-
September 2024 in the amount of $7,212.20 which was returned unpaid in October
2024 because CDI's account was blocked. In addition, it is a matter of public record
that CDI has closed certain offices and facilities, and that on October 8, 2024, CDI
filed a Notice of Anticipated Facility Closure under the federal Workers Adjustment
and Retraining Notification Act, 28 U.S.C. §§2101-2109 (the "WARN" Act), that it

3

was winding down operations at its Atlanta, Georgia facility and permanently laying off 165 workers between December 8, 2024 and December 11, 2024.

Defendant CDI was engaged in the business of buying and selling wholesale quantities of produce for distribution to chain restaurants on the East Coast and was subject to license under the PACA as a dealer at all relevant times (Yurko Declaration at ¶3, Exhibit B; Farmer Declaration at ¶ 3; Exhibit B). CDI's PACA license was terminated in or about March 2022 allegedly because CDI claimed to no longer be subject to the PACA but CDI nevertheless continued to keep purchasing wholesale quantities of produce, defined as 2,000 pounds on any given day, from Plaintiffs, in violation of the PACA regulations (Yurko Declaration at ¶¶ 3, 11-12; Group Exhibit I; Farmer Declaration at ¶ 12; Group Exhibit I) . 7 C.F.R. 46.3(a). The only explanation received from CDI for the checks returned unpaid from a blocked account and failure to pay is an email from John Duta of CDI dated October 16, 2024 to a Lipman representative advising that CDI's bank was running CDI with CDI allegedly no longer in control of its inventory or its invoices (Yurko Declaration at ¶ 17; Declaration of Robert P. Lamere at ¶ 7; Exhibit B. As a result, it appears that the PACA trust assets have been dissipated and are threatened with further dissipation. *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132 (3d Cir. 2000).

If notice is given to Defendants of the pendency of this motion, trust assets may be further dissipated before the motion is heard. Once dissipation has occurred, recovery of trust assets is all but impossible. H.R. Rep. No. 543, 98th Cong., 2d Sess. 4 (1983), reprinted in 1984 U.S. Code & Admin. News 405, 411. *J.R. Brooks & Son, Inc. v. Norman's Country Market, Inc.*, 98 B.R. 47 (Bankr. N.D. Fla. 1989); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, *supra*. Entry of this Order without notice assures retention of the trust assets under the control of the Court, which is specifically vested with jurisdiction over the trust. 7 U.S.C. § 499e(c)(4).

In accord with Rule 65(b)(2), the applicant's attorney has certified why notice should not be required.

Additionally, there is little harm to Defendants CDI and Individual Defendants in granting an injunction, which only requires Defendants to do that which they are required to do under the statute, i.e., maintain the trust required by statute and pay for the undisputed portion of produce. Similarly, Defendant CDI's banking institutions, including Defendant Wheaton Bank, will not be prejudiced by granting the requested injunctive relief, which merely maintains the integrity of the trust and prevents dissipation of CDI trust assets in the possession of CDI's banking institutions.

Lastly, the public interest is furthered by the granting of a temporary restraining order. The statute itself states that the trust law was established to benefit

5

the public interest that had suffered due to nonpayment for produce by receivers who instead gave security interests in their inventory, sales proceeds and accounts receivables to secured lenders. 7 U.S.C. § 499e(c)(1); *Tanimura & Antle,* 222 F.3d at 140.

The Court has determined that the bond requirements of Fed. R. Civ. P. 65(c) are not applicable to this case because Defendants already have at least $395,290.60 worth of trust assets from Plaintiffs as security for the issuance of this Order.

Based on the foregoing, the Court finds that Plaintiffs will suffer immediate irreparable injury in the form of a loss of trust assets unless this order is granted without notice.

Therefore, it is by the United States District Court for the Northern District of Georgia,

**ORDERED** that, sufficient reason having been shown therefore, Defendants, their customers, agents, officers, subsidiaries, assigns, banking institutions, money transfer service institutions, affiliates, and related entities, shall not alienate, dissipate, pay over or assign any assets of Customized Distribution, LLC, except for payment to Plaintiffs, until further order of this Court or until Defendants pay Plaintiffs the aggregate principal sum of $395,290.60, by bank check or wire transfer, to be held in trust by Plaintiffs' counsel for the benefit of Plaintiffs and any similarly situated trust creditors, pending further Order of this Court; and it is further

**ORDERED** that in the event Defendants fail to pay Plaintiffs the aforesaid sum of $395,290.60, by bank check or wire transfer within three days of service of this Order, then Defendants shall file with this Court, with a copy to Plaintiffs' counsel, an accounting which identifies the assets and liabilities and each account receivable of CDI signed under penalty of perjury; and that CDI shall also supply to Plaintiffs' attorney, within five days of the date of this Order, the following documents in connection with CDI's assets and liabilities: the most recent balance sheet, profit/loss statement, accounts receivable report, accounts payable report, accounts paid record, all records regarding money transfer services used by CDI, including all electronically stored information evidencing funds transferred into or received from any person or entity for the last 120 days, bank statements with cancelled checks for the last 120 days, and any tax returns filed by CDI for tax year 2023, along with accountings of the assets and liabilities, including accounts receivable reports, accounts payable reports, and bank statements with cancelled checks for the last 120 days for any and all of CDI's related and subsidiary companies; and it is further,

**ORDERED** that bond shall be waived in view of the fact that Defendants now hold $395,290.60 of Plaintiffs' assets; and it is further;

**ORDERED** that service of a copy of this order and the papers upon which it is based, together with the summons and complaint, shall be in accordance with Federal Rules of Civil Procedure 4, 5, and 65; and it is further

**ORDERED** that answering papers, if any shall be served by defendants so as to be received by counsel for Plaintiffs; and it is further

**ORDERED**, that pursuant to Fed. R. Civ. P. 65(b)(2), this Order shall expire 14 days from the date and time indicated hereafter, unless before that time the Court, for good cause, extends it for a like period or Defendants consent to a longer extension; and it is further

**ORDERED**, that pursuant to Fed. R. Civ. P. 65(b)(4), on two days' notice to Plaintiffs, Defendants may appear and move to dissolve or modify the order; and it is further

**ORDERED**, that based on the foregoing, Defendants shall show cause before this Court at Courtroom 1907, United States District Court for the Northern District of Georgia, Atlanta Division, Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303-3309, on the **31ST DAY OF DECEMBER, 2024 AT 3 O'CLOCK P.M.,** why a preliminary injunction should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendants, their customers, agents, employees, officers, directors, subsidiaries, affiliates, related entities, assigns, and

banking institutions, during the pendency of this action, from alienating, dissipating,

paying over or assigning any assets of CDI and its subsidiaries and related

companies, except for payment to Plaintiffs, until further order of this Court or until

Defendants pay Plaintiffs the amount of $395,290.60 by bank check or wire transfer,

to be held in trust by Plaintiffs' counsel for the benefit of Plaintiffs and any similarly

situated trust creditors, pending further Order of the Court, at which time the

temporary restraints imposed herein shall be released and dissolved.

ENTERED this 17th day of ___December___, 2024, at 10:00 A.m.

_____
Hon. Steve C. Jones
United States District Judge

9

## Certificate of Service

This is to certify that I have on this day electronically filed the foregoing *Motion (1) to Prohibit the Dissipation of Assets by Debtor Pursuant to 11 U.S.C. § 303(f), (2) for Authority to Deposit Funds under Pending TRO, (3) to Modify Stay for a Limited Purpose, and (4) to Grant Relief on an Expedited Basis* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program.

A copy has been sent by overnight mail as follows:

Customized Distribution, LLC
118 Raymond Street
Jonesboro, GA 30236

Customized Distribution, LLC
605 Selig Drive, SW
Atlanta, GA 30336

Customized Distribution, LLC
c/o Richard Schleizer,
2626 Cole Avenue, Suite 300
Dallas, TX 75204

Dated: March 24, 2025

/s/ G. Frank Nason, IV
G. Frank Nason, IV
Georgia Bar No. 535160

6000 Lake Forrest Drive
Suite 290
Atlanta, Georgia 30328
(404) 262-7373