UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  25-52759-JWC |
| CUSTOMIZED DISTRIBUTION LLC, | ) | |
| | ) | CHAPTER  7 |
| Debtor. | ) | |
| | ) | JUDGE JEFFERY W. CAVENDER |
| | ) | |

## RESPONSE OF BLACKBRIAR ADVISORS, LLC TO TRUSTEE'S MOTION FOR ORDER COMPELLING CHIEF RESTRUCTURING OFFICER OR, ALTERNATIVELY, DEBTOR'S OWNER TO PERFORM DEBTOR'S STATUTORY DUTIES

BlackBriar Advisors LLC ("BlackBriar") files this response to the *Trustee's Motion for Order Compelling Chief Restructuring Officer Or, Alternatively, Debtor's Owner to Perform Debtor's Statutory Duties* (Doc. No. 53) (the "Motion"). As set forth herein, the information and knowledge needed to complete the Debtor's schedules or to act as the Debtor's representative in this involuntary case were outside the scope of BlackBriar's narrow, nominal engagement as the Debtor's CRO.  Moreover, no one at BlackBriar is capable of attesting to the validity of the information that would be contained in such schedules or discussed at the 341 meeting under oath. Former officers and directors of the Debtor are identifiable and have appeared in this case, and the Trustee should look to them to perform the Debtor's statutory duties.

## BACKGROUND

1.     On March 13, 2025 (the "Petition Date"), certain creditors of Customized Distribution LLC (the "Debtor") filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code[1]. The Court entered the Order for Relief on April 21, 2025. *See* Doc. No. 34.

---

[1] 11 U.S.C. §§ 101 *et seq.*

2.      Michael J. Bargar (the "Trustee") was appointed and remains the chapter 7 trustee for the Debtor's estate.

3.      Prior to the Petition Date, on or about October 14, 2024, the Debtor, pursuant to that certain *Omnibus Written Consent of Customized Distribution Holdings LLC, CDI Buyer LLC and Customized Distribution LLC* (the "Written Consent"), engaged BlackBriar as "Chief Restructuring Officer" ("CRO"). A true and correct copy of the Written Consent is attached as Exhibit 1.

4.      Under Article II of the Written Consent, the Debtor employed BlackBriar pursuant to the terms and conditions of an engagement letter with BlackBriar. A true and correct copy of said engagement letter, dated October 11, 2024 (the "Engagement Letter") and executed by BlackBriar, on the one hand, and Dick DiStasio, as the Debtor's CEO, on the other hand, is attached as Exhibit 2.

5.      As set forth in the Engagement Letter, BlackBriar was retained "to facilitate and (sic) orderly liquidation and wind down of operations of [the Debtor] . . . in accordance with a plan to be approved by the board of directors of [the Debtor]." The financial advisory services (defined in the Engagement Letter as "the Services") to be provided by BlackBriar include:

- Establishing clear communication with the Board and all other parties in interest;
- Preparation of wind down budget and cash flow forecast to facilitate collection of assets subject to financing and security agreements of the Secured Lender;
- Managing daily operations;
- Establishing cash management procedures to maximize recovery and value for the parties in interest;
- Facilitate conversion of inventory to accounts receivable and collection of outstanding receivables;
- Selling assets and converting working capital to cash;
- Assist accounting department maintain financial records through transition/wind down; (sic)
- Provide reporting as necessary to stakeholders;
- Such other duties as mutually agreed by [BlackBriar] and the Board of Directors.

Exhibit A at 1-2.

6.  The Debtor's operations, and BlackBriar's services provided to the Debtor in connection therewith, effectively ceased as of early February 2025, well before the Petition Date.

7.  BlackBriar resigned as CRO on May 20, 2025, by letter directed to the Debtor and the Trustee.[2] A true and correct copy of BlackBriar's resignation is attached as <u>Exhibit 3</u>.

8.  BlackBriar is an unsecured, prepetition creditor of the Debtor for unpaid fees related to its engagement, in an amount well in excess of $100,000.00. BlackBriar reserves the right to file a proof of claim for such fees.

## ARGUMENT

The Trustee's Motion should be denied. BlackBriar is an inappropriate choice to complete the Debtor's schedules or to serve as the Debtor's representative in this bankruptcy case. If called upon to provide evidence, BlackBriar would show that it lacked (and continues to lack) access to the company's books and records that would be necessary to complete the schedules or to competently testify at a 341 meeting. Indeed, BlackBriar's access to financial information was limited to information regarding inventory and receivables necessary for it to perform its services within the scope of the Engagement Letter, and BlackBriar had no role or authority with respect to the Debtor's recordkeeping. Even if BlackBriar had access to such information, it would be unable to confirm the veracity of the Debtor's relevant books, records, and other information such that it could affirm the accuracy of the schedules or testify under oath.

Simply put, BlackBriar's engagement, notwithstanding its characterization as a CRO, was narrow. The purpose of BlackBriar's engagement was to facilitate the liquidation of the Debtor's

---

[2] BlackBriar did not resign until May 20, 2025, because in connection with its pre-petition engagement BlackBriar was holding checks payable to the Debtor and awaiting direction from both the District Court and this Court as to the disposition of those checks.

assets, primarily for the benefit of the Debtor's secured lender. The services contemplated by the Engagement Letter reflect this narrow scope. Notably, BlackBriar was not engaged to take over the Debtor's overall accounting (other than to assist the Debtor's accounting department with recordkeeping related to BlackBriar's services) or to prepare or assist in any way with a bankruptcy filing or similar proceeding. The Engagement Letter does not establish that BlackBriar at any point owed the Debtor any fiduciary duty. Further, BlackBriar's engagement began just five months before the Petition Date—well short of the lookback periods for much of the information required to be included in bankruptcy schedules. Additionally, BlackBriar is already an unsecured creditor of the Debtor with a meaningfully large claim; granting the Trustee's motion would essentially make BlackBriar an unemployed, uncompensated post-petition professional with a significant conflict of interest.

Moreover, other identifiable individuals are better positioned to perform the Debtor's statutory duties. These include Mr. DiStasio, the Debtor's former CEO; Jerald Hayes, who was, upon information and belief, the Debtor's Controller; Daniel Plattner, who upon information and belief was (unlike BlackBriar) an authorized signatory on the Debtor's bank accounts, and Benjamin Escobar. Each of these individuals has admitted that they were directors or officers of the Debtor, and that they may be liable for certain of the Debtor's acts and liabilities, by virtue of their efforts to modify the automatic stay to tap into directors' and officers' insurance coverage. *See Motion for Limited Relief from Automatic Stay* (Doc. No. 56). The Trustee has also, in the alternative, requested that the Court compel the Debtor's sole member, CDI Buyer, LLC ("Member") to complete the schedules and act as the Debtor's representative. BlackBriar submits that any of the foregoing would be better suited to complete the Debtor's schedules and perform the Debtor's other statutory duties.

Additionally, the Trustee has set forth no legal basis to compel BlackBriar to complete the schedules or act as the Debtor's representative. Bankruptcy Rule 9001(b)(5) governs who may be compelled to perform a debtor's duties:

> "Debtor," when the debtor is not a natural person and either is required by these rules to perform an act or must appear for examination, includes:
>   (A) if the debtor is a corporation and if the court so designates:
>       - any of all of its officers, directors, trustees, or members of a similar controlling body;
>       - a controlling stockholder or member; or
>       - any other person in control; or
>   (B) if the debtor is a partnership:
>       - any or all of its general partners; or
>       - if the court so designates, any other person in control.

Fed. R. Bankr. P. 9001(b)(5). BlackBriar fits into none of the categories listed in Rule 9001, but Messrs. DiStasio, Hayes, Plattner, Escobar, and Member all do.

BlackBriar appreciates the Trustee's challenges in attempting to administer this involuntary case where the Debtor has apparently failed to step up to perform its statutory duties. However, BlackBriar cannot be compelled to act as the Debtor's representative under Rule 9001(b)(5). Further, it would be inappropriate to appoint BlackBriar to complete the schedules or act as the Debtor's representative because it lacks the necessary information, nor could it rely on any of the Debtor's information provided to it such that it could attest to the schedules or testify under oath. The estate and its creditors would be ill-served by placing BlackBriar in such a position.

WHEREFORE, BlackBriar requests that the Court deny the relief sought in the Motion as to BlackBriar in each and every respect, and for such other relief as the Court deems appropriate.

Respectfully submitted this 4th day of June 2025.

[SIGNATURE ON FOLLOWING PAGE]

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

*/s/ Adam D. Herring*
ADAM D. HERRING
Georgia Bar No. 441119
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Tel: (404) 322-6143
Fax: (404) 322-6050
adam.herring@nelsonmullins.com

*Counsel to BlackBriar Advisors LLC*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on June 4, 2025, true and correct copies of the foregoing document were served on all parties registered to receive notices in this case via the Court's CM/ECF noticing system.

        NELSON MULLINS RILEY &
        SCARBOROUGH, LLP

        */s/ Adam D. Herring*
        ADAM D. HERRING
        Georgia Bar No. 441119
        201 17th Street NW, Suite 1700
        Atlanta, Georgia 30363
        Tel: (404) 322-6143
        Fax: (404) 322-6050
        adam.herring@nelsonmullins.com

**Exhibit 1**

**OMNIBUS WRITTEN CONSENT**
**OF**
**CUSTOMIZED DISTRIBUTION HOLDINGS LLC,**
**CDI BUYER LLC**
**AND**
**CUSTOMIZED DISTRIBUTION LLC**

**October 14, 2024**

The undersigned, being (i) all of the members of the Board of Managers (the "Board") of Customized Distribution Holdings LLC, a Delaware limited liability company ("Holdings"), (ii) the sole member (the "Buyer Member") of CDI Buyer LLC, a Delaware limited liability company ("Buyer"), and (iii) the sole member (the "CDI Member" and together with the Board and the Buyer Member, the "Approving Parties") of Customized Distribution LLC, a Georgia limited liability company ("CDI" and, together with Holdings and Buyer, collectively, the "Companies" and each, a "Company"), do hereby consent in writing, in accordance with Section 18-404(d) of the Delaware Limited Liability Company Act (the "DLLCA"), Section 18-302(d) of the DLLCA, and Section 14-11-309 of the Georgia Limited Liability Company Act (the "GLLCA"), to the adoption of this written consent (the "Written Consent"):

**I.      Release Agreement**

WHEREAS, it is contemplated that each of the Companies enter into a mutual release agreement with ABL Opco LLC, in its capacity as administrative agent for the lenders of the Companies, in the form previously made available to the Approving Parties ("Release Agreement"); and

WHEREAS, the Approving Parties have determined, after due investigation, that it would be advisable and in the best interests of the Companies and their unitholders to enter into the Release Agreement.

NOW, THEREFORE, BE IT RESOLVED, that the Approving Parties find that the Release Agreement, the transactions contemplated thereby and the agreements, instruments, filings and documents relating thereto are advisable and in the best interests of the Companies and their unitholders, and hereby authorizes, approves and adopts the Engagement Letter, the transactions contemplated thereby and all agreements, instruments, filings and documents relating thereto; and be it

FURTHER RESOLVED, that any officer of a Company is hereby authorized and directed, in the name and on behalf of such Company, to execute and deliver all agreements, instruments, filings and documents relating to, necessary or advisable to effectuate the Release Agreement and the transactions contemplated thereby.

**II.      Engagement Letter with CRO**

WHEREAS, it is contemplated that CDI enter into an engagement letter with a Chief Restructuring Officer, BLACKBRIAR Advisors LLC ("Blackbriar"), in the form previously made available to the Approving Parties ("Engagement Letter"); and

WHEREAS, the Approving Parties have determined, after due investigation, that it would be advisable and in the best interests of CDI and its unitholders to enter into the Engagement Letter.

NOW, THEREFORE, BE IT RESOLVED, that the Approving Parties find that the Engagement Letter, the transactions contemplated thereby and the agreements, instruments, filings and documents

relating thereto are advisable and in the best interests of CDI and CDI's unitholders, and hereby authorizes, approves and adopts the Engagement Letter, the transactions contemplated thereby and all agreements, instruments, filings and documents relating thereto; and be it

FURTHER RESOLVED, that any officer of CDI is hereby authorized and directed, in the name and on behalf of CDI, to execute and deliver all agreements, instruments, filings and documents relating to, necessary or advisable effectuate the Engagement Letter and the transactions contemplated thereby.

**III.**     **3rd A&R Operating Agreement of CDI**

WHEREAS, it is contemplated that CDI amend and restate its Operating Agreement in the form previously made available to the Approving Parties ("Operating Agreement"); and

WHEREAS, the Approving Parties have determined, after due investigation, that it would be advisable and in the best interests of CDI and its unitholders to amend and restate its Operating Agreement in the form previously made available to the Approving Parties.

NOW, THEREFORE, BE IT RESOLVED, that the Approving Parties find that the Operating Agreement, the transactions contemplated thereby and the agreements, instruments, filings and documents relating thereto are advisable and in the best interests of CDI and CDI's unitholders, and hereby authorizes, approves and adopts the Operating Agreement, the transactions contemplated thereby and all agreements, instruments, filings and documents relating thereto; and be it

FURTHER RESOLVED, that any officer of CDI and the CDI Member is hereby authorized and directed, in the name and on behalf of CDI and the CDI Member, to execute and deliver all agreements, instruments, filings and documents relating to, necessary or advisable effectuate the Operating Agreement and the transactions contemplated thereby.

**IV.**     **Resignation of Officers of CDI**

NOW, THEREFORE, BE IT RESOLVED, pursuant to the Operating Agreement of CDI and applicable law, the Approving Parties hereby accept the resignation of the following persons as officers of CDI effective immediately:

Richard DiStasio – Chief Executive Officer

Daniel Plattner – Chief Financial Officer

John Kelly – Vice President and Assistant Secretary

Matthew Moran – Vice President and Assistant Secretary

**V.**     **Appointment of Managers and CROs of CDI**

WHEREAS, pursuant to the Operating Agreement of CDI and applicable law, the CDI Member has the authority to appoint managers and officers to serve in such capacities under the Operating Agreement and applicable law.

NOW, THEREFORE, BE IT RESOLVED, that the CDI Member hereby appoints, ratifies and confirms the appointment of Harold Kessler and Robert Schleizer from Blackbriar, to serve as the managers and co-Chief Restructuring Officers of CDI, in accordance with the organizational documents of CDI and

applicable law, until a successor is elected and qualified or until the earlier resignation, removal or death of such person.

## VI.    <u>General Authority</u>

FURTHER RESOLVED, that the officers of the applicable Company be, and each of them acting alone hereby is, authorized and directed, in the name and on behalf of such Company, to execute and deliver, or to cause to be executed and delivered, all such other agreements, instruments, certificates and documents, and to do or cause to be done all such further acts and things as they deem necessary or advisable in order to effectuate the purpose and intent of the foregoing resolutions; that their authority to act under these resolutions shall be conclusively evidenced by their so acting; and that any and all such actions heretofore taken on behalf of such Company in such respects in connection with effectuating these resolutions and the transactions contemplated thereby are hereby ratified, approved and confirmed as the acts and deeds of such Company; and be it

FURTHER RESOLVED, that the officers of the applicable Company be, and each of them acting alone hereby is, authorized and empowered to retain, in the name and on behalf of such Company, such agents, financial advisors, legal counsel and such other advisors, consultants or experts necessary or appropriate to carry out the actions contemplated in these resolutions, and to secure any appropriate advice and opinions from such agents, advisors, consultants or experts and to pay all fees and expenses in connection therewith; and be it

FURTHER RESOLVED, that any and all actions heretofore taken by any officer or officers of the applicable Company with respect to any matter referred to or contemplated by any of the foregoing resolutions be, and hereby are, ratified and confirmed as the acts and deeds of such Company; and be it

FURTHER RESOLVED, that all acts and deeds heretofore done by any officer, director, manager, employee or agent acting on behalf of the applicable Company prior to the date hereof for and on behalf of such Company in carrying out the purposes and intentions of these resolutions are hereby ratified, approved and confirmed; and be it

FURTHER RESOLVED, that this Written Consent may be executed in several counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument and the execution of this Written Consent shall constitute a written waiver of any notice required by the DLLCA or the GLLCA, as applicable, or the governing documents of the applicable Company.

[signature page follows]

IN WITNESS WHEREOF, the undersigned, being the Board, the Buyer Member and the CDI Member, have executed this Written Consent as of the date first above set forth.

**Board:**

_Matthew J. Moran_
Matthew J. Moran

_____
John P. Kelly

_____
Richard DiStasio

_____
Meredith Neizer

**Buyer Member:**

**Customized Distribution Holdings LLC**

By:  _____
Name:  John Kelly
Title:   Vice President

**CDI Member:**

**CDI Buyer LLC**

By:  _____
Name:  John Kelly
Title:   Vice President

[Signature Page to Omnibus Written Consent of Customized Distribution Holdings LLC, CDI Buyer LLC and Customized Distribution LLC]

IN WITNESS WHEREOF, the undersigned, being the Board, the Buyer Member and the CDI Member, have executed this Written Consent as of the date first above set forth.

**Board:**

_____
Matthew J. Moran

_____
John P. Kelly

_____
Richard DiStasio

_____
Meredith Neizer

**Buyer Member:**

**Customized Distribution Holdings LLC**

By: _____
Name:  John Kelly
Title:   Vice President

**CDI Member:**

**CDI Buyer LLC**

By: _____
Name:  John Kelly
Title:   Vice President

IN WITNESS WHEREOF, the undersigned, being the Board, the Buyer Member and the CDI Member, have executed this Written Consent as of the date first above set forth.

**Board:**

_____
Matthew J. Moran


_____
John P. Kelly

_____
Richard DiStasio


_____
Meredith Neizer



**Buyer Member:**

**Customized Distribution Holdings LLC**


By: _____
Name: John Kelly
Title:  Vice President



**CDI Member:**

**CDI Buyer LLC**


By: _____
Name: John Kelly
Title:  Vice President

IN WITNESS WHEREOF, the undersigned, being the Board, the Buyer Member and the CDI Member, have executed this Written Consent as of the date first above set forth.

**Board:**

_____

Matthew J. Moran

_____

John P. Kelly

_____

Richard DiStasio

*Meredith Neizer*
_____

Meredith Neizer

**Buyer Member:**

**Customized Distribution Holdings LLC**

By:    _____
Name:  John Kelly
Title:   Vice President

**CDI Member:**

**CDI Buyer LLC**

By:    _____
Name:  John Kelly
Title:   Vice President

**Exhibit 2**



***VIA EMAIL: RP.DiStasio@cdi-llc.com***

October 11, 2024

Mr. Dick DiStasio
Chief Executive Officer
**Customized Distribution LLC**
c/o HC Private Investments
444 West Lake Street, Suite 1700
Chicago, IL 60606

Re: Engagement Agreement

Dear Mr. DiStasio:

BLACKBRIAR Advisors LLC ("BLACKBRIAR") is pleased to have the opportunity to provide strategic and financial advisory services to Customized Distribution LLC ("CDI") or the "Company").

BLACKBRIAR provides a full range of financial, strategic, operational, and management consulting services to its clients.   BLACKBRIAR's staff consists of Certified Turnaround Professionals, Certified Insolvency Restructuring Advisors, and Certified Public Accountants, professionals experienced in financial and organizational structuring and process improvement as well as corporate finance, financial reporting and operational advisory services.

**SCOPE OF SERVICES**
BLACKBRIAR  agrees to serve as Chief Restructuring Officer ("CRO") for the Company to facilitate and orderly liquidation and wind down of operations of the Company.

BLACKBRIAR will provide financial advisory services (the "Services") to the Company to facilitate the liquidation in accordance with a plan to be approved by the board of directors of the Company. Harold Kessler and Robert Schleizer will serve as co-CRO's and BLACKBRIAR  will provide additional professionals to implement the plan.

The Services will include:

- Establishing clear communication with the Board and all other parties in interest;
- Preparation of wind down budget and cash flow forecast to facilitate collection of assets subject to financing and security agreements of the Secured Lender;
- Managing daily operations;
- Establishing cash management procedures to maximize recovery and value for the parties in interest;

Customized Distribution LLC.
October 11, 2024

- Facilitate conversion of inventory to accounts receivable and collection of outstanding receivables;
- Selling assets and converting working capital to cash;
- Assist accounting department maintain financial records through transition/wind down;
- Provide reporting as necessary to stakeholders;
- Such other duties as mutually agreed by BLACKBRIAR and the Board of Directors.

## FEES

Services will be provided to CDI on an hourly basis at the following rates:

| | | |
|---|---|---|
| Partners and Managing Directors | $650 | per hour |
| Senior Directors | 525 | per hour |
| Directors | 450 | per hour |
| Senior Financial Analysts | 375 | per hour |
| Financial Analysts | 300 | per hour |

An initial retainer of $40,000 will be due upon execution of the of the Agreement.

Fees for Services will be billed to CDI weekly and will be due and payable upon receipt of each invoice.

The Company shall be billed for out of town travel at ½ of each professional's hourly rate for necessary and shall also pay BLACKBRIAR for actual out-of-town travel expenses (if any) incurred, which will also be due upon receipt. All invoices shall include supporting travel expense documentation.

## LIABILITY AND INDEMNIFICATION

In no event, unless it has been finally determined by a court having competent jurisdiction, that BLACKBRIAR was grossly negligent or acted with willful misconduct or fraudulently, shall BLACKBRIAR (including any officer, director, shareholder, employee, agent and representative thereof, as well as affiliates and successors of the foregoing) be liable to the Company or any of the Company's officers, directors, shareholders, employees, agents, representatives, or any third party, whether pursuant to a claim in tort, contract or otherwise.  In no event shall BLACKBRIAR (including any officer, director, shareholder, employee, agent and representative thereof, as well as affiliates and successors of the foregoing) be liable for any special, consequential, indirect, exemplary, punitive, lost profits or similar damages arising from the engagement or the Services. The Company shall indemnify, defend and hold BLACKBRIAR (including its officers, directors, shareholders, principals, employees, agents and representatives, as well as affiliates and successors of the foregoing) and its contract affiliates, harmless on a current basis as incurred, from and against any and all liabilities, losses, demands, penalties, actions, suits, costs and expenses (including, without limitation, reasonable attorney's fees and expenses), to which any of the foregoing may be subject to or incur arising out of, or in connection with the performance of Services or otherwise incident to the engagement herein contemplated except to the extent that it is finally determined by a court of competent jurisdiction that such damages arise directly out of BLACKBRIAR's own gross negligence or willful misconduct.  The Company shall  provide the CRO with a separate directors and officers insurance policy mutually acceptable to both parties. The Company's obligations under this paragraph shall survive the termination of the engagement herein contemplated.

Customized Distribution LLC.
October 11, 2024

**WORK PRODUCT**

The Company acknowledges and agrees that any written reports, analyses, statistics, assessments, plans, forecasts, recommendations, studies or other written work product prepared by BLACKBRIAR pursuant to this engagement (collectively, "Work Product") is confidential and proprietary and is for the Company's exclusive use and may not be distributed or provided to, shared with or disclosed to any other party or person, without BLACKBRIAR's prior written consent.  Furthermore, the Work Product may not be relied upon by any other party or person, for any reason whatsoever and may not be utilized for any other purpose except for
those specifically contemplated herein.  Upon full payment of all amounts due to us in connection with this engagement, the work product embodied in the deliverables set out in this engagement letter will become your sole and exclusive property, except as set forth below.  Notwithstanding the forgoing, the Company may disclose the Work Product without BLACKBRIAR's consent from its consultants and potential lenders and investors.

Our workpapers will not constitute work product and will remain our sole and exclusive property. The Company further acknowledges and agrees that BLACKBRIAR shall have the right to use information obtained, received and/or generated (by it or others), in connection with the Services and the engagement described herein, for the preparation of general industry performance evaluations and similar analysis for BLACKBRIAR 's marketing, research and business development activities as well as any other similar purposes BLACKBRIAR may determine so long as such use does not include the specific name of the Company but merely refers generally to the industry and/or business type.  BLACKBRIAR agrees not to use the Company's name in any way without the Company's written consent. This paragraph shall survive the termination/expiration of the engagement described in this letter.

**GENERAL TERMS**

This engagement letter and the relationship established hereby shall be governed by the laws of the State of Texas and any dispute or claim arising out of or relative thereto shall be heard by the state or federal courts located in Dallas County, Texas.  This engagement letter constitutes the entire agreement between the parties and may be modified or amended only in writing signed by both parties.

We appreciate the opportunity to work with you and are prepared to begin the Services immediately.

Very truly yours,

**BLACKBRIAR ADVISORS LLC**

Robert Schleizer
Managing Partner

**Customized Distribution LLC.**
**October 11, 2024**

Agreed to and accepted by:

CUSTOMIZED DISTRIBUTION LLC

By: _____                    Date: _____

Mr. Dick DiStasio
Its:  Chief Executive Officer

cc: Harold Kessler, Matthew Moran, John Kelly, Dan Plattner

**Exhibit 3**

May 20, 2025

**_VIA FEDERAL EXPRESS_**

Customized Distribution, LLC
c/o CDI Buyer LLC, LLC Member, and
HC Private Investments, LLC
444 West Lake Street
Suite 1700
Chicago, IL 60606
Attention: John P. Kelly and
Matthew J. Moran

Michael J. Bargar, Trustee
Rountree Leitman Klein & Geer, LLC
Century Plaza I
2987 Clairmont Road
Suite 350
Atlanta, Georgia 30329

RE:   <u>Resignation</u>

To whom it may concern:

Effective as of the date of this resignation notice, BlackBriar Advisors LLC ("<u>BlackBriar</u>"), along with BlackBriar's members, officers, and employees, including (but not limited to) Robert Schleizer and Harold Kessler, hereby resigns from the position referred to in BlackBriar's _October 11, 2024 Engagement Agreement_ (the "<u>_Engagement Agreement_</u>") as "Chief Restructuring Officer", and from any and all other positions, responsibilities and/or obligations, to the extent such exist, the subject of the _Engagement Agreement_ and/or the _October 14, 2024 Omnibus Written Consent of Customized Distribution Holdings LLC, CDI Buyer LLC and Customized Distribution LLC_, as well from any other positions, titles, and/or employment with Customized Distribution, LLC that BlackBriar and/or any of its members, officers, and/or employees hold or are purported to hold.

**BLACKBRIAR ADVISORS, LLC**

By: _Robert Schleizer_
Robert Schleizer, Managing Partner

Date: 05/20/2025

_Robert Schleizer_
Robert Schleizer

Date: 05/20/2025

_Harold Kessler_
Harold Kessler (May 20, 2025 15:19 CDT)
Harold Kessler

Date: 05/20/2025

6862110